UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| LAURIE ANN RACKLIFF, | ) | |
| --- | --- | --- |
| Plaintiff | ) | |
| v. | ) | No. 1:16-cv-00250-JHR |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) | |
| Defendant | ) | |

## MEMORANDUM DECISION[2]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found that the plaintiff had no severe physical impairment. The plaintiff seeks remand on the bases that the administrative law judge erred in failing to find her migraines/headaches and occipital neuralgia severe and in failing to fully and fairly develop the record. *See* Plaintiff's Statement of Errors in Support of a Social Security Appeal ("Statement of Errors") (ECF No. 18) at 1, 9-13.[3] I conclude that, in the circumstances presented, the administrative law judge had no duty to develop the record further and that, even assuming *arguendo* that she erred in finding no severe migraine/neuralgia impairment, remand would amount to an empty exercise. Hence, I affirm the commissioner's decision.

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 15, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 20.

[3] I refer to the page numbers found at the bottom of the pages of the Statement of Errors.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a medically determinable impairment of headaches, Finding 2, Record at 14; that she did not have an impairment or combination of impairments that significantly limited, or was expected to significantly limit, her ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments, Finding 3, *id*.; and that she, therefore, had not been disabled from May 23, 2012, her amended alleged onset date of disability, through the date of the decision, November 18, 2014, Finding 4, *id*. at 28-29. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical

evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Step 2 Error

The plaintiff first argues that the administrative law judge erred in failing to find any severe physical impairment, complaining that she misconstrued the raw medical evidence and erroneously rejected the opinions of two agency nonexamining physicians, Benjamin Weinberg, M.D., and Donald Trumbull, M.D., that she had severe headaches and degenerative disc disease. *See* Statement of Errors at 9-12; Record at 87-91, 105-08.

The commissioner rejoins that the administrative law judge made a permissible, commonsense judgment that the plaintiff had no severe impairment and, even if she did not, remand would amount to an empty exercise because adoption of the opinion of either Dr. Weinberg or Dr. Trumbull would dictate a conclusion that the plaintiff was not disabled. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 23) at 2-13 (citing, *inter alia*, *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)).

In *Ward*, the First Circuit held that remand is not necessary if correction of the error at issue will amount to no more than an empty exercise because there is an independent ground, based on a fully developed record, on which affirmance "must be entered as a matter of law." *Ward*, 211 F.3d at 656. *See also, e.g., Day v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) ("Pursuant to the rule of *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the

agency decision-maker. An exception to the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion.") (citations and internal punctuation omitted).

For the reasons discussed below, I am unpersuaded that further development of the record is necessary. On this fully developed record, the adoption of even the more restrictive (that is, the more plaintiff-friendly) opinion of Dr. Weinberg would direct a conclusion of non-disability in this case, rendering remand an empty exercise.

In an opinion dated September 14, 2012, Dr. Weinberg determined that, for the period from October 30, 2000, through September 10, 2008, there was insufficient medical evidence to evaluate the plaintiff for a medically determinable impairment, and, for the period from September 11, 2008, through September 14, 2012, the plaintiff was limited by severe migraine headaches and degenerative disc disease to the performance of light work with the following additional postural limitations: she could climb ramps/stairs occasionally, never climb ladders/ropes/scaffolds, and could balance, stoop, kneel, crouch, and crawl occasionally. *See* Record at 87-91.[4]

Moreover, in an opinion dated April 8, 2013, Dr. Trumbull determined that, as of that time, the plaintiff was limited by severe migraine headaches and degenerative disc disease to the performance of light work with the following additional postural limitations: she could frequently climb ramps, stairs, ladders, ropes, and scaffolds and could frequently stoop, kneel, crouch, and crawl. *See id*. at 105-08. He determined that she had no limitations in her ability to balance. *See*

---

[4] The plaintiff originally filed applications for both Social Security Disability ("SSD") and SSI benefits, alleging that she became disabled on October 30, 2000. *See* Record at 11. However, during her October 1, 2014, hearing, the administrative law judge stated that, for purposes of her SSD claim, she would have to establish that she had a severe impairment as of September 30, 2005, her date last insured for benefits. *See id*. at 48. The plaintiff's counsel acknowledged that the plaintiff had not started consistently seeing a doctor until 2008. *See id*. The plaintiff then amended her alleged date of onset of disability to May 23, 2012, the protective filing date of her SSI application, acknowledging that this would effectively eliminate her SSD claim. *See id*. at 49; *see also* Statement of Errors at 1.

4

*id.* at 108. He explained that, at that time, the plaintiff's migraines were controlled, and she had only minimal to mild degenerative disc disease of the cervical spine and focal/stable/non-acute degenerative joint disease of the lumbar spine without established neural impingement. *See id.*

As the commissioner points out, *see* Opposition at 11-13, in some circumstances an administrative law judge permissibly may rely on the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. § 404, to determine that a claimant is not disabled.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet her burden of showing that there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet her Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment

. . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ [administrative law judge] must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

As the commissioner points out, *see* Opposition at 11-12, the postural limitations assessed by Dr. Weinberg have been found to have only a negligible effect on the occupational bases for sedentary or light work, *see, e.g., Greenlief v. Colvin*, No. CA 14-376, 2015 WL 4663593, at *12 (D.R.I. Aug. 6, 2015) (limitation to light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling did not preclude reliance on Grid); *Keeling v. Colvin,* No. CIV-13-498-M, 2014 WL 4388411, at *8-*10 (W.D. Okla. Sept. 5, 2014) (limitation to light work with only occasional climbing, stooping, kneeling, crouching, and crawling but never climbing ladders, ropes, or scaffolds did not preclude reliance on Grid); *Lassor v. Astrue*, No. 06-176-P-H, 2007 WL 2021924, at *4 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007) (noting, with favor, that in *Atkinson v. Barnhart*, 2006 WL 1455473, at *6-*7 (D. Nev. May 19, 2006), court upheld administrative law judge's conclusion that a limitation to only occasionally performing postural activities, with no climbing of ladders, ropes, or scaffolds, and a need to avoid concentrated exposure to excessive vibration or work hazards, did not significantly erode the ability to perform sedentary and light work jobs); *Swanick v. Apfel*, No. CIV. 99-293-M, 2000 WL 1507421, at *8 nn. 6-7 (D.N.H. July 25, 2000) ("some limitation in climbing and balancing[,]" a limitation to stooping occasionally, and limitations in crawling and kneeling have little significance in the broad world of work; "[r]elatively few jobs in the national economy require ascending or descending ladders and scaffolding").

6

As the commissioner observes, *see* Opposition at 12 n.7, the plaintiff was 48 years old at the time of the administrative law judge's November 2014 decision, defined as a "younger individual," was not illiterate or unable to communicate in English, and had a high school diploma, *see* Record at 190, 231, 233; Grid § 200.00(h)(1). For purposes of argument, the commissioner assumes that she had no transferable skills. *See* Opposition at 12 n.7. In those circumstances, the Grid directs a conclusion that an individual limited to the performance of light work is not disabled. *See* Grid § 202.21.[5] The same would be true if the plaintiff had been found limited to the performance of sedentary work. *See* Grid §§ 201.18 (pertaining to younger individuals age 45-49), 201.21 (pertaining to younger individuals age 18-44).

This is dispositive of the plaintiff's bid for remand on the basis of the asserted Step 2 error.[6]

### B. Failure To Develop Record Adequately

The plaintiff also seeks remand on the basis that the administrative law judge failed in her duty to develop the record adequately. *See* Statement of Errors at 12-13. The First Circuit has recognized that administrative law judges have a general duty to develop the record, albeit less pronounced when, as here, a claimant is represented by counsel. *See, e.g., Heggarty,* 947 F.2d at 997; *Hawkins v. Chater,* 113 F.3d 1162, 1167-68 (10th Cir. 1997).

---

[5] The commissioner mistakenly cited Grid § 202.13, which pertains to persons closely approaching advanced age. *See* Opposition at 12; Grid § 202.13. Nothing turns on the error.

[6] At oral argument, the plaintiff's counsel further contended that the administrative law judge erred at Step 2 in failing to properly assess a "treating opinion" of Mitchell Ross, M.D. However, as she recognized, and as is discussed below, Dr. Ross did not provide an opinion. Rather, in a letter dated September 5, 2014, he described his treatment of the plaintiff. The plaintiff's counsel also argued that the commissioner's reliance on the Weinberg and Trumbull opinions to demonstrate harmless error is flawed in two respects: that it constitutes an impermissible *post hoc* rationalization, in that the administrative law judge never progressed beyond Step 2, and that, in any event, the record was insufficiently developed to draw supportable conclusions as to the plaintiff's RFC. For the reasons discussed below, I conclude that the record was adequately developed. For the reasons discussed above, I find that, while *post hoc* rationalizations generally are impermissible, the commissioner meets the *Ward* exception to that rule.

The plaintiff also invokes 20 C.F.R. §§ 416.912(d) and 416.920b(c)(1). *See* Statement of Errors at 12. Section 416.912(d) provides that "we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." 20 C.F.R. § 416.912(d). Section 416.920b(c) provides:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>
> (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>
> (2) We may request additional existing records (see § 416.912);
>
> (3) We may ask you to undergo a consultative examination at our expense (see §§ 416.917 through 416.919t); or
>
> (4) We may ask you or others for more information.

*Id*. § 416.920b(c).[7]

---

[7] As the commissioner observes, *see* Opposition at 14 n.10, "[i]n 2012, [the] Social Security Administration updated its regulations about re-contacting medical sources[,]" *Trujillo v. Colvin*, No. 1:14-cv-35-DN-DBP, 2015 WL 5009360, at *5 n.3 (D. Utah Aug. 21, 2015). "The primary change was to eliminate the prior sections 404.1512(e) and 416.912(e) and add new sections 404.1520b and 416.920b." *Id*. "The old rule stated that 'we will' re-contact a treating source under certain circumstances." *Id*. (quoting former 20 C.F.R. § 404.1512(e)). "The new rule states that, when more evidence is needed, 'we will determine the best way to resolve the inconsistency or insufficiency.'" *Id*. (quoting 20 C.F.R. § 404.1520b(c)).

The plaintiff faults the administrative law judge for failing to recontact (i) her treating physician, Dr. Ross, for clarification regarding her limitations and (ii) agency examining consultant Roger S. Zimmerman, Ph.D., for clarification regarding his findings as to her mental limitations. *See* Statement of Errors at 13. She adds that the administrative law judge erred in failing to order a consultative examination to further assess her physical limitations. *See id*.

With respect to Dr. Ross, the administrative law judge noted, in relevant part:

> Examination reports often indicate that no signs of impairment were observed by Dr. Ross. However, he did at times note in separate reports that he administered occipital nerve blocks because the [plaintiff] had marked tenderness in the occipital nerve areas such as reported on March 29, 2010. By his wording, it is unclear if Dr. Ross actually observed the tenderness or merely [was] reporting the [plaintiff's] allegations. The fact that the examination report did not contain the most serious abnormality mentioned indicates that it was merely a report of the [plaintiff's] allegations of tenderness and was used as justification for the nerve blocks.
>
> ∗∗∗
>
> The undersigned also does not find that reports by Dr. Ross support the [plaintiff's] allegations of debilitating headaches and other pain. . . . Although his examination reports note fairly consistent complaints of severe and frequent headaches, he also generally reported good results with Botox injections. Notes on January 30, 2012 reveal that the [plaintiff] alleged having five to six headaches per month, well below the constant headaches [she] alleged . . . to the Social Security Administration. Later treatment notes by Dr. Ross through February 2013 indicate some waxing and waning of headaches but generally ongoing improvement with Botox and nerve block injections. The treatment notes generally report that the [plaintiff] asserted that Botox injections provided at least two to three months of benefit starting a day or two after the injection. Maximum benefit was generally at a level 1 on a scale of 0-4, zero being no pain and 4 indicating severe pain. She often alleged having 4 level headaches at the time of the injections as the prior injection had worn off. On February 18, 2013, in the last treatment note of record from Dr. Ross, the [plaintiff] alleged having migraines only once or twice a month of varying severity. She asserted that, if she treats them early, they are not severe. Dr. Ross noted that a migraine trigger log did not indicate any triggers. Dr. Ross' reports contain no indication after 2009 that the headaches were related in any way to activity or concentration.
>
> On September 5, 2014 he stated in a letter "to whom it may concern" that he continued to treat her for chronic intractable migraines with occipital nerve blocks and Botox every three months and with naproxen and Imitrex as needed and

9

>  Topamax and verapamil preventative medication. He expressed no opinion regarding the [plaintiff's] limitations and did not state how often, how long, or how severe the migraines were.

Record at 19-20 (citations omitted).

The administrative law judge further noted that allegations that the plaintiff made to neurologist Kathryn Seasholtz, D.O., on January 5, 2012, including allegations of daily headaches associated with right paresthesias from the right elbow, nausea/vomiting, blurred vision, scintillating scotomata, pronounced allodynia with pain just touching her hair, and twitching facial muscles, stood "in sharp contrast to her allegations to Dr. Ross in December 2011 and January 2012 regarding the severity of her headaches and other symptoms." *Id*. at 21-22. She found that "the inconsistencies between the [plaintiff's] allegations to Dr. Seasholtz and to Dr. Ross weigh against her credibility." *Id*. at 22.

The plaintiff argues that the administrative law judge's conclusion that Dr. Ross merely relayed her subjective allegations of tenderness is unsupported by the record. *See* Statement of Errors at 12-13. She adds that, to the extent that the administrative law judge (i) pointed out that Dr. Ross expressed no opinion regarding her limitations or the nature of her migraines in his February 2014 letter and (ii) found that inconsistencies in her reports to Drs. Ross and Seasholtz weighed against her credibility, she failed to recontact Dr. Ross for clarification regarding the plaintiff's limitations. *See id*. at 13.

As the commissioner rejoins, *see* Opposition at 13-14, the administrative law judge reasonably inferred that Dr. Ross's hospital procedure report of March 29, 2010, reflected the plaintiff's subjective complaints of tenderness based on the fact that his examination report of the same date omitted mention of such findings, *compare* Record at 499-501 *with id*. at 502.

10

In a similar vein, the administrative law judge supportably concluded that Dr. Ross's silence as to the plaintiff's limitations and the severity of her migraines, and marked inconsistencies between the plaintiff's roughly contemporaneous reports to Drs. Seasholtz and Ross, cut against the credibility of her allegations. These conclusions were not drawn in a vacuum; rather, the administrative law judge had earlier noted that Dr. Ross's treatment notes revealed ongoing improvement with treatment, with the plaintiff herself reporting that, as of February 18, 2013, she had only one to two migraines a month of varying severity and, if she treated them early, they were not severe. *See* Record at 20, 405.

As the commissioner points out, *see* Opposition at 14, 20 C.F.R. § 416.920b(c) applies only when an administrative law judge "ha[s] insufficient evidence to determine whether [a claimant] is disabled, or after weighing the evidence [he or she] determine[s] [he or she] cannot reach a conclusion about whether [the claimant is] disabled," 20 C.F.R. § 416.920b(c). The administrative law judge never indicated that this was the case; to the contrary, she summarized the reasons why, on the record presented, she drew the conclusion that the plaintiff had no severe impairment. *See* Record at 28. In any event, as the commissioner observes, *see* Opposition at 14, even if she had determined that she required additional evidence, she had other options to obtain it besides recontacting Dr. Ross, *see* 20 C.F.R. § 416.920b(c). She, therefore, did not err in not recontacting Dr. Ross.

> With respect to Dr. Zimmerman, the administrative law judge stated, in relevant part:
>
> Although Dr. Zimmerman stated that the [plaintiff's] symptoms rose to moderate levels at times during the previous year, he did not describe what those moderate symptoms would be or how long they lasted. He did not indicate that the moderate symptoms would cause more than slight limitation in the [plaintiff's] ability to perform basic work tasks. Given that his statement was based on the [plaintiff's] allegations and that she has already been found not very credible by the undersigned, there is no basis for finding that she had more than slight limitations due to psychological impairments.

11

Record at 27-28.

The plaintiff contends that the administrative law judge failed to recontact Dr. Zimmerman for clarification regarding his findings as to her mental limitations. *See* Statement of Errors at 13. Yet, as the commissioner points out, *see* Opposition at 15, section 416.920b(c) does not provide for recontacting an agency examining consultant (*versus* a treating source), *see* 20 C.F.R. § 416.920b(c)(1) (discussing the option of "recontact[ing] your treating physician, psychologist, or other medical source"). In any event, as noted above, the regulation does not require an administrative law judge to recontact a medical source; that is merely one of several available options. *See id.* § 416.920b(c).

Finally, the administrative law judge did not err in failing to order a physical examination by an agency examining consultant. As noted above, she never indicated that she required more evidence to make a determination regarding disability. In any event, sending a claimant for an examination is one of several options available to an administrative law judge who requires more evidence to make a disability determination; it is not mandatory. *See id.*

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 22nd day of May, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge